

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

DWAYNE MILLER, )
)
Appellant, )
)
v. )     WD76649
)
)     OPINION FILED:
MISSOURI DEPARTMENT OF )     June 3, 2014
CORRECTIONS, )
)
Respondent. )

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Daniel R. Green, Judge**

**Before Division One:** Joseph M. Ellis, Presiding Judge, and
Karen King Mitchell and Anthony Rex Gabbert, Judges

Dwayne Miller appeals from an order and judgment denying his petition for declaratory judgment and entering judgment on behalf of the Missouri Department of Corrections ("DOC"). Miller raises two points on appeal. In his first point, Miller contends that he was entitled to an earlier parole hearing than that granted to him because the applicable Board of Probation and Parole ("Board") regulation was the one in effect at the time of his offenses (setting a minimum parole eligibility requirement of twelve years) rather than the time he received a parole hearing (setting a minimum parole eligibility requirement of fifteen years). In his second point, Miller

contends that he was not sentenced to life without parole, and he is therefore entitled to a maximum release date or parole release date short of his full sentences of life in prison. Miller further contends that the mandatory language of the applicable regulation created a liberty interest in parole once he satisfied the minimum eligibility requirement. We affirm.

## Factual and Procedural Background[1]

On December 9, 1991, Dwayne Miller pled guilty in the Circuit Court of the City of St. Louis to two counts of the class A felony of second-degree murder, in violation of section 565.021.1,[2] for murders that occurred in 1990.[3] The court sentenced Miller to life in prison on each count and set the sentences to run concurrently. On January 10, 1992, Miller pled guilty in the Circuit Court of St. Louis County to one count of the class B felony of rape, in violation of section 566.030, and three counts of the class B felony of sodomy, in violation of section 566.060, for offenses that occurred on December 19, 1990.[4] The court sentenced Miller to life in prison for all four convictions and set the sentences to run concurrently to each other and to the St. Louis City murder convictions.

The Board determined that Miller was required to serve a minimum of fifteen years on his life sentences before becoming eligible for parole. Miller had a hearing for parole consideration on April 21, 2004. The Board denied Miller parole at that time, finding that release would depreciate the seriousness of Miller's offenses.

Miller had another parole hearing on April 29, 2009. The Board again denied Miller parole, finding that because of the circumstances surrounding his offenses and his use of

---

[1] The facts are undisputed.

[2] All statutory references are to the Missouri Revised Statutes (1990), unless otherwise noted.

[3] The only indications in the record of the dates of offense of Miller's second-degree murder convictions are Miller's statements in his motion for summary judgment that the offense date is January 1991 and his statement in his brief that the offenses were committed in 1990. Citing Miller's brief, the DOC states in its brief that the murders occurred in 1990.

[4] There is some confusion on this record as to whether these are class A or class B felonies. Because the distinction does not affect our analysis, we will not attempt to resolve the conflict.

excessive force or violence, release would depreciate the seriousness of Miller's offenses. The Board scheduled Miller for a reconsideration hearing in April 2014.[5]

On July 9, 2012, Miller filed a petition for declaratory judgment in the Circuit Court of Cole County against DOC. In his petition, Miller argued that he was not required to serve a sentence longer than fifteen years, that he had a liberty interest in early release, that any statute or regulation requiring him to serve more than fifteen years was a violation of his liberty interest, and that requiring prisoners to serve sentences of varying lengths for the same offenses amounted to "disparate treatment." Miller also argued that the court should order the Board to establish a conditional release date for him and apply the version of section 558.019 in effect at the time of his offenses to his parole hearing. Miller conceded in his petition that section 558.019.3 and 14 CSR § 80-2.010 (the regulation in effect at the time of his parole hearing) mandated that he serve a minimum of fifteen years on his sentences.

Miller and DOC both filed motions for summary judgment. In its motion, DOC argued that: (1) Miller was not entitled to have the Board set a conditional release date; (2) Miller's contention that he was being denied parole consideration in violation of due process and equal protection was moot; and (3) Miller did not have standing to claim that he was being required to serve a minimum term of fifty years before becoming eligible for parole because the Board did not make such a determination. On June 10, 2013, the court denied Miller's petition for declaratory judgment and entered judgment on behalf of DOC. Miller appeals.

**Standard of Review**

We review the grant of summary judgment de novo. *Carroll v. Mo. Bd. of Prob. & Parole*, 113 S.W.3d 654, 656 (Mo. App. W.D. 2003). "'[S]ummary judgment is appropriate

---

[5] The record does not indicate whether this hearing occurred, but as of the writing of this opinion, Miller was still incarcerated.

when the moving party establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.'" *Howard v. Mo. Dep't of Corr.*, 341 S.W.3d 857, 858 (Mo. App. W.D. 2011) (quoting *O.L. v. R.L.*, 62 S.W.3d 469, 473 (Mo. App. W.D. 2001)).

## Analysis

## Point I

In his first point on appeal, Miller argues that the trial court erred in failing to declare that the applicable parole board regulation was the one in effect at the time of his offenses, rather than the one in effect at the time of his parole hearing. He claims that, had the appropriate regulation been applied, he would have been eligible for a parole hearing after twelve, rather than fifteen, years.[6] We disagree.

**A. Miller's contention that he was entitled to a parole hearing based on the parole regulation in effect at the time of his offenses is moot.**

Miller's contention that the Board applied the wrong regulation and, as a result, erroneously required him to serve a minimum term of fifteen years before granting him a parole hearing is moot. "To maintain a declaratory judgment action, the party seeking the declaration must demonstrate that (1) a justiciable controversy exists and (2) the party has no adequate remedy at law." *Foster v. State*, 352 S.W.3d 357, 359 (Mo. banc 2011). "A justiciable controversy exists when the plaintiff: (1) 'has a legally protect[a]ble interest at stake;' (2) 'a substantial controversy exists between parties with genuinely adverse interests;' and (3) 'that controversy is ripe for judicial determination.'" *Id.* (quoting *Levinson v. State*, 104 S.W.3d 409, 411 (Mo. banc 2003)). "[T]he question raised cannot be a mere moot question." *Magenheim v. Bd. of Educ. of Sch. Dist. of Riverview Gardens*, 347 S.W.2d 409, 417 (Mo. App. 1961). "'A

---

[6] In both Points I and II, Miller claims that the mandatory language of that regulation created a liberty interest in parole. For ease of analysis, this claim will be discussed in Point II, *infra*.

cause of action is moot when the question presented for decision seeks a judgment upon some matter which, if the judgment was rendered, would not have any practical effect upon any then existing controversy.'" *Underwood v. Dir. of Mo. Dep't of Corr.*, 215 S.W.3d 326, 327 (Mo. App. W.D. 2007) (quoting *State ex rel. Garden View Care Ctr. v. Mo. Health Facilities Comm.*, 926 S.W.2d 90, 91 (Mo. App. W.D. 1996)). In this case, Miller has been incarcerated for twenty-three years and has received two parole hearings: one in 2004 and another in 2009. Therefore, whether Miller was required to serve twelve years or fifteen years before receiving a parole hearing was not an existing controversy before the trial court and, thus, is moot.

**B. Miller was required to serve a fifteen-year minimum sentence before becoming eligible for parole.**

Even if it were not moot, Miller's contention that the Board should have applied 13 CSR § 80-2.010[7] (the version of the Board's parole regulation in effect on the date of his offenses and relating to inmates serving life sentences) to determine his parole eligibility would fail.[8] We initially note that, while 13 CSR § 80-2.010 is referred to in both the parties' briefs and the trial court's judgment as the regulation in effect at the time of Miller's offenses, 14 CSR § 80-2.010 (Nov. 1989) was the regulation pertaining to parole eligibility in effect at the time of Miller's offenses.[9] That version provided, in pertinent part:

> For inmates serving life sentences . . . , the board considers the deterrent and retributive portion of the sentence to have been served when the inmate has completed fifteen (15) years of the maximum sentence. For inmates serving multiple life sentences or other sentences concurrent or consecutive to a life sentence, the board, due to the nature and length of the sentences, may determine not to set a minimum eligibility date.

14 CSR § 80-2.010(4)(H) (Nov. 1989).

---

[7] All references to CSR are to the Missouri Code of State Regulations.
[8] It is not clear which version of the regulations the Board applied at the 2004 parole hearing.
[9] As discussed *supra*, Miller variously refers to the offenses occurring in 1990 and January 1991. The record does not provide any information about the dates of the murders. Regardless, throughout 1990 and in January 1991, the same version of 14 CSR § 80-2.010 was in effect.

References to "the deterrent and retributive portion of the sentence" in the regulations delineate the mandatory minimum sentence to be served. *Watley v. Mo. Bd. of Prob. & Parole*, 863 S.W.2d 337, 339 (Mo. App. W.D. 1993). The language of the regulation was the same at the time of Miller's 2004 parole hearing. 14 CSR § 80-2.010(4)(H) (July 27, 1992).

Consistent with 14 CSR § 80-2.010, at the time of Miller's offenses, section 558.019.3[10] provided: "If the defendant is not a prior offender, persistent offender, or class X offender and has pleaded guilty to or has been found guilty of a felony and sentenced to life imprisonment, the minimum prison term which the defendant must serve shall be fifteen years."[11] Miller was not determined to be a prior, persistent, or class X offender. Thus, under both the relevant regulation and the statute in effect on the date of Miller's offenses, Miller would have been required to serve a minimum sentence of fifteen years before being eligible for parole. In addition, at the time of Miller's offenses, 14 CSR § 80-2.010(4)(H) specifically stated that, for inmates (such as Miller) serving multiple life sentences, the Board may determine not to set a minimum parole eligibility date. Because there was no statute or regulation in effect at the time of Miller's

---

[10] Section 558.019 was amended in 1990, but subsection 3 remained the same.

[11] The calculation start date for Miller's sentence for the murder convictions is January 14, 1991. The calculation start date for Miller's rape and sodomy convictions is January 10, 1992. Miller's first parole hearing was on April 21, 2004. Although both section 558.019 and 14 CSR § 80-2.010 required that Miller serve a minimum fifteen-year sentence on all of his convictions, Rule 6(C) of the rules promulgated by the Board governing the granting of parole provides that "[o]ffenders convicted of crimes with statutory parole restrictions will be scheduled for a parole hearing two (2) years prior to the minimum prison term, or according to the regular hearing schedule, whichever occurs later. Offenders not eligible for parole will receive notice of their statutory release date." Bd. of Prob. & Parole, Mo. Dep't of Corr., PROCEDURES GOVERNING THE GRANTING OF PAROLES AND CONDITIONAL RELEASES 5 (Apr. 2009). Although there is no explanation in the record as to why Miller received a parole hearing in April 2004, twenty-one months prior to the completion of his minimum 15-year sentence, Rule 6(C) may provide an explanation.

It is clear that the Board adhered to the version of section 558.019 in effect at the time of Miller's offenses, rather than the version in effect at the time of the 2004 parole hearing, as the 2004 version provided that the minimum sentence in Miller's circumstances would be "eighty-five percent of the sentence imposed by the court or until the offender attains seventy years of age, and has served at least forty percent of the sentence imposed, whichever comes first." § 558.019.3 RSMo Cum. Supp. 2004. Under the 2004 version of the statute, Miller's minimum sentence would have been much longer than the fifteen-year minimum provided by the 1990 statute.

offenses that provided for a twelve-year minimum sentence for Miller, the argument that he was entitled to a parole hearing after serving twelve years of his sentence fails.[12]

Point I is denied.

**Point II**

In his second point relied on, Miller contends that the mandatory language of the applicable regulation and statutes created a liberty interest in parole once he satisfied the applicable minimum eligibility requirements. Further, he argues that DOC's interpretation of section 558.019, as allowing a prisoner sentenced to life in prison to serve his entire life in prison, is unreasonable. Miller contends that, although the courts sentenced him to life in prison, he was not sentenced to life without parole and, therefore, he is entitled to a maximum release date or parole release date short of his full life sentences; he suggests that any other interpretation of section 558.019 would produce an "unreasonable result." While it is not completely clear what Miller is arguing or what relief he is seeking, it appears that Miller believes that he is entitled to either a parole release date or a conditional release date.[13] Because parole and conditional release are distinct concepts,[14] we will discuss the two concepts separately.

---

[12] We do not intend to imply that the parole regulation and statute in effect at the time Miller committed the offenses for which he is incarcerated are applicable. Rather, we need not reach the issue of which statute and rule applies because, under either the regulation and statute in effect at the time of the offenses or those in effect at the time he was granted a hearing, a fifteen-year minimum prison term is the very least he would have been required to serve before becoming eligible for parole. (Further, as discussed in footnote 11, Miller would have been required to serve a minimum prison term longer than fifteen years under the version of section 558.019 in effect at the time of his 2004 parole hearing.)

[13] While it is not clear from Miller's brief, he may be arguing that he is entitled to a maximum release date of fifty years under section 558.019.4. The applicable version of section 558.019 is the one in effect at the time of Miller's sentencing. *Phillips v. Mo. Dep't of Corr.*, 323 S.W.3d 790, 793-94 (Mo. App. W.D. 2010). Section 558.019.4 RSMo Cum. Supp. 1991 provided: "For the purpose of determining the minimum prison term to be served, the following calculators and definitions shall apply . . . (4) A sentence of life shall be calculated to be fifty years[.]" By its clear terms, this section does not establish a presumptive release date of 50 years for a life sentence. Rather, it provides that fifty years is the length of a life sentence for purposes of calculating the minimum prison term under section 558.019.2. Therefore, we reject any argument by Miller that he is entitled to a maximum release date of fifty years.

[14] *Edger v. Mo. Bd. of Prob. & Parole*, 307 S.W.3d 718, 721 (Mo. App. W.D. 2010) ("While conditional release is akin to parole, the two are not identical or interchangeable terms.").

7

**A. Miller did not have a liberty interest in parole.**

We first address Miller's contention that he had a liberty interest in parole once he satisfied the minimum parole eligibility requirement.[15] "Due process protects liberty interests." *Fults v. Mo. Bd. of Prob. & Parole*, 857 S.W.2d 388, 392 (Mo. App. W.D. 1993) (citing U.S. Const. amend XIV, § 1; Mo. Const. art. 1, § 10). A prisoner does not have a protectable "expectation of parole by virtue of the mere existence of a parole system." *Id.* "Nevertheless, a state may create a protected liberty interest in parole" by use of mandatory language, such as "shall," in statutes or regulations, which "creates a legitimate expectation that parole will be granted when designated conditions occur." *Id.* at 392-93. Section 217.690.4 authorizes the Board to adopt rules regarding parole eligibility and hearings, and 14 CSR § 80-2.010 sets forth the guidelines under which the Board is to determine the parole eligibility of an offender. *Edger v. Mo. Bd. of Prob. & Parole*, 307 S.W.3d 718, 720 (Mo. App. W.D. 2010). Section 217.690 "creates no justifiable expectation of release, giving the Board 'almost unlimited discretion' in whether to grant parole release." *State ex rel. Cavallaro v. Groose*, 908 S.W.2d 133, 135 (Mo. banc 1995) (quoting *Ingrassia v. Purkett*, 985 F.2d 987, 988 (8th Cir. 1993)). Section 217.690.1 "creates no protected liberty interest in parole release for due process purposes because the statute uses discretionary language, 'the board *may in its discretion* release or parole.'" *Fults*, 857 S.W.2d at 393. Similarly, the regulations promulgated under the authority of section 217.690 do not create a liberty interest in parole. *Kaczynski v. Mo. Bd. of Prob. & Parole*, 349 S.W.3d 354, 357 (Mo. App. W.D. 2011). Further, under the versions of the regulation in effect at both the time of Miller's offenses and the time of his parole hearings, a finding that "[r]elease at this time would depreciate the seriousness of the offense committed" was expressly identified

---

[15] Although Miller argues that he had a liberty interest in parole after serving 12 years, for the reasons discussed *supra*, his minimum parole eligibility requirement was 15 years. Thus, we will treat Miller's argument as though he is claiming a liberty interest in parole after serving 15 years.

as a reason for denying parole.[16]  Therefore, Miller had no liberty interest in parole once he satisfied the minimum parole eligibility requirements.

### B.  Miller did not have a liberty interest in conditional release.

The term "conditional release" is defined by section 558.011.4(2):[17]

> **"Conditional release"** means the conditional discharge of an offender by the board of probation and parole, subject to conditions of release that the board deems reasonable to assist the offender to lead a law-abiding life, and subject to the supervision under the state board of probation and parole.  The conditions of release shall include avoidance by the offender of any other crime, federal or state, and other conditions that the board in its discretion deems reasonably necessary to assist the releasee in avoiding further violation of the law.

"Parole . . . is almost entirely within the discretion of the Parole Board[,] . . . [while] conditional release is specifically dictated by statute."[18]  *Cooper v. Holden*, 189 S.W.3d 614, 618 (Mo. App. W.D. 2006).  "Section 558.011.4 specifies the time tables under which an offender is entitled to be conditionally released, although a conditional release date can be extended if the procedures of section 558.011.5[19] are followed."  *Edger*, 307 S.W.3d at 721.  Section 558.011.4(1) provides that "[a] sentence of imprisonment for a term of years for felonies other than dangerous felonies as defined in section 556.061 . . . shall consist of a prison term and a conditional release term."  The statute allows "conditional release only for persons sentenced to a term of years, who have not been convicted of a dangerous felony as described in section 556.061 or who have not been remanded four or more times to the Department of Corrections."  *Cooper*, 189 S.W.3d at

---

[16] *See* 14 CSR § 80-2.010(9)(A)(1) (Nov. 1989 and July 27, 1992); Bd. of Prob. & Parole, Mo. Dep't of Corr., PROCEDURES GOVERNING THE GRANTING OF PAROLES AND CONDITIONAL RELEASES 8 (Apr. 2009).

[17] All statutory references to section 558.011 are to RSMo 2000, as updated through the 2014 Cumulative Supplement.

[18] "'A prisoner has no constitutional or inherent right to be conditionally released before the expiration of a valid sentence.'"  *Elliott v. Carnahan*, 916 S.W.2d 239, 241 (Mo. App. W.D. 1995) (quoting *Fults v. Mo. Bd. of Prob. & Parole*, 857 S.W.2d 388, 392 (Mo. App. W.D. 1993)).

[19] Section 558.011.5 states that "[t]he date of conditional release from the prison term may be extended up to a maximum of the entire sentence of imprisonment by the board of probation and parole."  "There are no limitations, conditions or carve outs."  *Rentschler v. Nixon*, 311 S.W.3d 783, 788 (Mo. banc 2010).  An inmate has "no right of conditional release until the board actually issues a date for conditional release."  *Id.* at 788.

617. The definition of "[d]angerous felony" in section 556.061(8) includes second-degree murder. Miller was convicted of two counts of murder in the second degree, a dangerous felony under section 556.061(8), and he was sentenced to life imprisonment, rather than a "term of years." Under these circumstances, section 558.011.4 does not provide for a conditional release term. *See Cooper*, 189 S.W.3d at 617.

Point II is denied.

## Conclusion

We affirm the trial court's denial of Miller's declaratory judgment petition and its entry of judgment in favor of the DOC.

_____
Karen King Mitchell, Judge

Joseph M. Ellis, Presiding Judge, and
Anthony Rex Gabbert, Judge, concur.